```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF OHIO
                           EASTERN DIVISION
```

**DONNA J. JOHNSON,**

            **Plaintiff,**
  vs.                                         Civil Action 2:14-CV-925
                                                      Judge Marbley
                                                      Magistrate Judge King

**COMMISSIONER OF SOCIAL SECURITY,**

            **Defendant.**

### REPORT AND RECOMMENDATION

**I.   Background**

      This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for supplemental security income. This matter is now before the Court on plaintiff's *Statement of Specific Errors*, Doc. No. 16, the Commissioner's *Memorandum in Opposition*, Doc. No. 18, and plaintiff's *Reply*. Doc. No. 19.

      Plaintiff Donna J. Johnson filed her current application for benefits on July 19, 2012, alleging that she has been disabled since April 1, 2012. The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

      An administrative hearing was held on December 19, 2013. Plaintiff, who was represented by counsel, appeared and testified, as did Jerry A. Olsheski, Ph. D., a vocational expert, and Davonna Johnson, plaintiff's daughter. On January 9, 2014, the administrative law judge issued a written decision concluding that plaintiff was not disabled at any time between the date that the application was filed and the date of the administrative decision. *PageID* 734-50. That decision became the final decision of the

Commissioner of Social Security when the Appeals Council declined review on May 28, 2014. *PageID* 715-19.

Plaintiff was 45 years of age on the date her application was filed. *See PageID* 748, 946. She has at least a high school education, is able to communicate in English, and has past relevant work as a telemarketer. *PageID* 748, 951. Plaintiff has not engaged in substantial gainful activity since July 19, 2012, her application date. *PageID* 736.

**II. Administrative Decision**

The administrative law judge found that plaintiff's severe impairments consist of obesity, enlarged bulky uterus and uterine fibroids (status-post uterine artery embolization), history of phlebitis, deep venous thrombus of left lower extremity, chronic occlusion of the celiac artery with history of celiac artery thrombosis/thrombocytosis, chronic obstructive pulmonary disease ("COPD"), major depressive disorder, schizoaffective disorder, substance abuse disorder and borderline intellectual functioning. *PageID* 736. Plaintiff's impairments, whether considered singly or in combination, neither meet nor equal a listed impairment, *PageID* 738, and leave plaintiff with the residual functional capacity ("RFC") for light work

> except that the claimant should avoid concentrated exposure to extreme temperatures, breathing irritants, such as fumes, odors, dusts, or gases, and poor ventilation, and hazards, such as unprotected heights, dangerous machinery, and commercial driving. From a mental standpoint, she could understand, remember, and carry out simple instructions where pace and productivity is [sic] not dictated by an external source over which the claimant has no control, such as an assembly line or conveyor belt. The work should not require strict production quotas. She could make judgments on simple work matters and respond appropriately to usual work situation and changes in a routine work setting that is repetitive day to day with few and expected changes. She could respond appropriately to supervision and the occasional interaction with coworkers and the public on trivial matters, defined as dispensing and sharing

>factual information not likely to generate an adversarial setting. She could not work in a team or in tandem with coworkers.

*PageID* 740-41. Relying on the testimony of the vocational expert, the administrative law judge found that this RFC permits the performance of a significant number of jobs in the national economy, including such representative jobs as hand packer, packing and filling machine operator, and mail clerk. *PageID* 749. Accordingly, the administrative law judge concluded that plaintiff was not disabled.

**III. Standard**

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if

substantial evidence also supports the opposite conclusion. *Longworth*, 402 F.3d at 595.

In her *Statement of Specific Errors*, plaintiff contends that the administrative law judge failed to properly consider plaintiff's obesity, improperly relied on a single Global Assessment of Functioning ("GAF score") to the exclusion of other GAF scores in the record, and erred in evaluating plaintiff's credibility as it relates to her mental impairments.

## IV. Evidence of Record

### A. Physical Impairments

In February 2012, plaintiff's body mass index ("BMI") was recorded as 35.74. *PageID* 1113.

Plaintiff presented to an emergency room on February 17, 2012 with complaints of chest pain, shortness of breath and abdominal pain. She reported a history of asthma, and complained of worsening pain with coughing. On examination, plaintiff had 100% oxygen saturation on room air and she was able to speak in full sentences when walking. Her lungs were clear but slightly diminished in both bases. Her abdomen was soft and bowel sounds were present. She had diffuse tenderness, but no organomegaly (abnormal enlargement of organs). She had full strength in her extremities. A chest x-ray showed no acute disease. *PageID* 1043-45. A breathing treatment was administered.

Plaintiff presented to an emergency room on August 1, 2012 for upper abdominal pain and was subsequently admitted. On examination, plaintiff's lungs were clear and her epigastrium abdomen was soft and tender.

Neurological and musculoskeletal examinations were normal; she was psychiatrically appropriate. *PageID* 1161-67.

In September 2012, state agency physician Leigh Thomas, M.D., reviewed plaintiff's file. *PageID* 823-24. Dr. Thomas opined that plaintiff could occasionally lift/carry twenty pounds, stand or walk about six hours in an 8-hour workday, and sit up to 6 hours in an 8-hour workday. She could frequently climb ramps and stairs and crawl, and could occasionally climb ladders, ropes or scaffolds, and stoop; she should avoid concentrated exposure to extremes of cold and heat, humidity, fumes, odors, and hazards. *PageID* 823-24.

On December 18, 2012, plaintiff underwent a uterine artery embolization for fibroids, following which she complained of increased swelling and pain at the site. She was prescribed antibiotics. *PageID* 1239.

On February 25, 2013, state agency physician Michael Lehn, M.D., reviewed plaintiff's file and affirmed Dr. Thomas' assessment of plaintiff's RFC. *PageID* 843-44.

B.  **Mental Impairments**

In April 2010, *i.e.*, two years prior to plaintiff's alleged date of onset of disability, plaintiff was evaluated by Sudhir Dubey, Psy.D. *PageID* 988-93. Plaintiff reported that she had been abused as a child. *PageID* 989. One of her four children had been murdered. Plaintiff acknowledged a history of drug and alcohol abuse and a period of incarceration; she reported that she has been clean since 2003. *Id.* She lived with a friend and relied on relatives to help her with activities of daily living. *PageID* 991. She can use a microwave and helps with house work. *Id.* Plaintiff denied

5

that psychological issues affected her work but reported that they did affect her ability to retain work. *PageID* 989-90. On mental status examination, plaintiff's thoughts were logical but tangential. She reported mood swings and crying spells, as well as auditory and visual hallucinations. *PageID* 991. She denied suicidal or homicidal ideation or anhedonia. She was oriented x 4 and recalled 3 digits forwards and 2 digits backwards; she could remember no objects after a five minute delay. Dr. Dubey diagnosed a schizoaffective disorder and borderline intellectual functioning. He assigned her a GAF score of 55.[2] *PageID* 992. Dr. Dubey concluded that plaintiff was moderately impaired in her ability to withstand stress and pressure from work, understand and follow complex directions, and perform complex tasks. *PageID* 993.

Plaintiff has undergone mental health treatment at Southeast, Inc. ("Southeast"). The record contains a plan of care dated May 1, 2011, in which plaintiff's symptoms were listed as sleep disturbance, tearfulness, isolation, psycho motor agitation, anxiety, panic attacks, attention problems, irritability, "amotivation," poor energy level, feelings of hopelessness and helplessness, and hypervigilance. Plaintiff was diagnosed with a mood disorder, not otherwise specified; cocaine dependence, in remission; alcohol intoxication, in remission; and borderline intellectual functioning. She was assigned a current GAF score of 48 and a highest GAF in the past year of 50. *PageID* 997.

---

[2] A GAF is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Commissioner*, 61 Fed.Appx. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32-34. Individuals with scores of 51-60 are classified as having "moderate symptoms ... or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." DSM-IV-TR at 34

Plaintiff was evaluated that same month by Southeast psychiatrist Abdul Hasan, M.D., who noted that plaintiff had not been seen in the clinic since approximately March 2009. *PageID* 1536. She had repeatedly failed to appear and had therefore not been on medication. *Id.* Plaintiff reported that her "principle problem is that she gets angry almost every day with everyone." *Id.* Dr. Hasan noted that plaintiff had not been psychiatrically hospitalized, but had been to NetCare on many occasions. She denied suicide attempts, although she reported suicidal thoughts after her son was killed. She apparently received mental health treatment while in prison. She admitted past drug and alcohol abuse. On mental status examination, plaintiff was not cooperative and her speech was loud, disjointed, and unfocused. Her mood appeared to be irritable and somewhat sad. She was vague about hallucinations. She was alert and oriented x 3. No distress or anxiety was noted. Dr. Hasan diagnosed a mood disorder, not otherwise specified, rule out bipolar II disorder, rule out schizoaffective disorder; and borderline intellectual functioning. He assigned plaintiff a GAF score of 55. *PageID* 1537.

Michele Evans, Ph.D., consultatively evaluated plaintiff for disability purposes on January 4, 2012. *PageID* 1003-10. Plaintiff reported that she had been abused as a child. *PageID* 1004. She was eligible for special education services in school; she left school in the 11th grade because she had a child. *Id.* Plaintiff acknowledged a history of marijuana and cocaine abuse, but denied current use. *PageID* 1005. She lives with a friend, *PageID* 1004, but does not socialize with neighbors. She can shop and make her own purchases. She helps with household chores and uses the microwave to cook. She does not use the stove because she forgets about the food. She worked as a telemarketer for a couple of months and at a

warehouse for a few months before being laid off. She denied difficulty getting along with others or with her work quality. Dr. Evans found that plaintiff's thoughts were coherent. She was oriented x 4, she recalled no items after delay and 4 digits forwards and 2 digits backwards. Plaintiff was unable to perform serial 7s but did perform simple calculations using her fingers. Dr. Evans diagnosed major depressive disorder and assigned a GAF score of 51. *PageID* 1008. Dr. Evans opined that plaintiff would have problems with complex work tasks. *PageID* 1009.[1]

Plaintiff was seen again at Southeast in February and March 2012. *PageID* 1112-18. On mental status examination in February, plaintiff was generally anxious, with blocked cognition. Her behavior varied between appropriate and withdrawn. *PageID* 1116-18. In March, plaintiff was pleasant with an anxious mood and blocked cognition. *PageID* 1115. Her case was terminated by the clinic in May 2012 due to lack of contact. *PageID* 1110-11.

Tonnie Hoyle, Psy.D., reviewed plaintiff's file in October 18, 2012. *PageID* 813-26. According to Dr. Hoyle, plaintiff was mildly restricted in her activities of daily living, and had moderate difficulties in maintaining social functioning and concentration, persistence and pace. *PageID* 821. Dr. Hoyle found that the report of Dr. Evans was consistent with the medical evidence. The report from Dr. Dubey was given lesser weight because of its age. *PageID* 822. Dr. Hoyle opined that plaintiff is able to perform tasks requiring up to 3 steps with no strict time or production

---

[1] The administrative law judge considered the consultative reports of only Dr. Dubey and Dr. Evans. The report from a third consultative examination, conducted by Kent Rowland, Ph.D., on October 2, 2012, *see PageID* 819-22, was not considered by the administrative law judge because plaintiff denied that she was the person examined. *PageID* 745-46, 759.

demands and requiring only superficial interaction with the general public, although plaintiff may react negatively to criticism. *PageID*  826.

Plaintiff was re-assessed for treatment at Southeast by Rebekah MacCaughey, L.S.W., in November 2012. *PageID* 1519-23. Plaintiff reported ongoing depression since early adolescence, which had worsened between 2004 and 2008 when three family members died unexpectedly while she was in prison. Plaintiff reported sadness, crying spells, fatigue, racing thoughts, difficulty falling/staying asleep, disrupted appetite, weight gain, and increased isolation. Ms. MacCaughey diagnosed major depressive affective disorder, recurrent, severe, without mention of psychotic behavior; cocaine dependence, in remission; non-dependent cannabis abuse, in remission; and borderline intellectual functioning. She assigned a GAF score of 50, which is suggestive of serious symptomatology.  *PageID* 1523.

State agency psychologist Karla Voyten, Ph.D., reviewed plaintiff's file on February 25, 2013, and affirmed Dr. Hoyle's assessment. *PageID* 843-44.

When seen by Dr. Hasan at Southeast in July 2013, plaintiff reported anxious/fearful thoughts, depressed mood, difficulty concentrating, difficulty falling asleep, diminished interest or pleasure, and racing thoughts. She denied increased energy, hallucinations or thoughts of death or suicide. On mental status examination, she exhibited no sign of psychosis or mania. Her appearance was appropriate, she was oriented to person, place, time and situation. Her behavior and psychomotor behaviors were unremarkable, her speech was appropriate, her affect was constricted, her mood was depressed, her memory was intact, her attitude was cooperative, and her judgment/insight were fair. Dr. Hasan diagnosed a major depressive affective disorder, recurrent episode; cocaine dependence, in remission;

and non-dependent cannabis abuse, in remission. He assigned a GAF score of 55.  *PageID* 1533-35.

Eleanora Sikio-Klisovic, M.D., consultatively evaluated plaintiff for "capacity" during her August 2013 hospitalization for COPD.  *PageID* 1650-56.  According to Dr.Sikio-Klisovic, plaintiff was in a frustrated mood but mental status findings, including attention, orientation, affect, and thought process, were otherwise normal. Plaintiff reported no suicidal or homicidal ideation, her insight and judgment were appropriate, and there were no gross deficits of cognition. *PageID* 1654-55.

V.   **Administrative Hearing**

At the administrative hearing, plaintiff testified that she lives alone. *PageID* 766.  Her daughter comes over every other week to help her with laundry. *PageID* 767.  She can perform other chores, including house cleaning, independently; she can care for her personal needs. *PageID* 767-68.  She enjoys reading, watching television, and going to the library. *PageID* 787. She spends time with her grandchildren. *PageID* 788. She does not drive but relies on others to transport her or uses public transportation. *PageID* 768-69.  She is able to go shopping. *PageID* 769-70. She testified that she is compliant with court-ordered mental health treatment. *PageID* 785-86.

Plaintiff reported that her last job ended when "a lot of people got laid off." *PageID* 771. She cannot work because she becomes confused and has difficulty understanding. She noted her boss got tired of explaining to her how to perform her job duties "over and over." *PageID* 775.

Plaintiff testified that she suffers from depression caused, in part, by the death of her son.  *PageID* 778. She also sometimes suffers from

anxiety or nervousness. *PageID* 779. She has difficulty breathing because of her COPD, particularly in hot or cold temperatures, *PageID* 781, although she acknowledged that she smokes ½ pack of cigarettes per day, *PageID* 794. She can walk a city block but has problems standing because of the blood clot in her leg. *PageID* 782.

Plaintiff's daughter, Davonna Johnson, also testified at the hearing. *PageID* 795- 801. Ms. Johnson sees her mother every day.  *PageID* 795, 798. She assists her mother with dressing, grocery shopping and other chores. *PageID* 798. Her mother suffers from bipolar disorder, and a blood disorder, and has breathing issues. *PageID* 796. According to Ms. Johnson, plaintiff cannot walk far because of shortness of breath. *Id.* She must take breaks while performing housework and she cannot work around chemicals. *Id.* She experiences depression and has problems with concentration. *PageID* 797. Things must be repeatedly explained to her. *Id.*

## V. Discussion

As noted *supra*, the administrative law judge found that plaintiff has an RFC for a reduced range of light work. Plaintiff complains that, in formulating this RFC, the administrative law judge failed to properly consider plaintiff's obesity. "Obesity is a complex, chronic disease characterized by excessive accumulation of body fat." Social Security Ruling 02-01p, 2000 WL 628049 (Sept. 12, 2002). An administrative law judge must consider the impact of a claimant's obesity on her RFC. *Id*. Plaintiff's BMI of 35.74 is evidence of obesity. *See id*.

The administrative law judge included obesity in plaintiff's severe impairments, *PageID* 736, and expressly considered the impact of plaintiff's obesity:

11

> With regard to the claimant's obesity, the record indicates that the claimant is 5'0" tall and weighed about 183 pounds, giving her a [BMI] of 35.74 and placing her in the obese category. Although there is no listing for obesity, the claimant's weight has been carefully considered within the parameters of Social Security Rule 02-01p. While it is recognized that her weight may well aggravate other complaints, it does not reasonably appear that the extent of her obesity, even when considered in combination with her other documented impairments, meets or equals a listed impairment or would preclude all work or reduce her functioning to the level contemplated by any Listing.

*PageID* 738. In finding that plaintiff has the RFC for a reduced range of light work, the administrative law judge found as follows:

> While the claimant does physical [sic] impairments that would limit her physical abilities somewhat, such as obesity, deep venous thrombosis of the left lower extremity, celiac artery thrombus and COPD, physical exams regularly showed that she retained full strength in the extremities and normal gait with no evidence of neurological or sensory deficits.

*PageID* 748. This Court concludes that the administrative law judge properly considered and evaluated plaintiff's obesity. Significantly, plaintiff does not suggest any greater functional limitation caused by her obesity beyond those found by the administrative law judge.

Plaintiff next contends that, in formulating plaintiff's mental RFC, the administrative law judge over-relied on moderate range GAF scores and improperly failed to credit GAF scores that suggested a greater degree of limitation than that found by the administrative law judge.

Although not dispositive, a GAF score can be helpful to an administrative law judge in formulating a claimant's RFC. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002); *Kornecky v. Commissioner of Social Security,* 167 Fed. Appx. 496, 503 n. 7 (6th Cir. 2006). "[I]t allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kornecky,* 167 Fed. Appx. at 503 n.7. In this case,

GAF scores suggestive of moderate symptomatology were rendered by Dr. Dubey in April 2010, *PageID* 992, by Dr. Hasan in May 2011, *PageID* 1537, by Dr. Evans in January 2012, *PageID* 1008, and again by Dr. Hasan in July 2013, *PageID* 1535. GAF scores suggestive of serious symptomatology were rendered only by an unidentified evaluator in May 2011, *PageID* 997, and by a social worker in November 2012, *PageID* 1523. Both of these assessments were made after plaintiff had been without mental health care for a significant period of time. The administrative law judge noted most of these scores. *See PageID* 744-46. Plaintiff complains that the administrative law judge improperly failed to mention the May 2011 GAF score of 48 by the unidentified evaluator; however, an administrative law judge is not required to mention every piece of evidence in the record. *Kornecky,* 167 Fed. Appx. at 507-08("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party")(internal quotation marks omitted); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534-35 (6th Cir. 2001). In any event, the administrative law judge's assessment of plaintiff's mental impairments and RFC from a mental perspective did not rely solely on those scores. The Court perceives no error in this regard.

Finally, plaintiff complains that the administrative law judge erroneously based his credibility determination on plaintiff's financial ability to undergo care and, in doing so, cited non-binding authority from a different jurisdiction, *Craig v. Chater*, 943 F. Supp. 1184, 1190 (W.D. Mo. 1996). The administrative law judge considered plaintiff's credibility as follows:

> Several inconsistencies throughout the record further undermine the credibility of the claimant's allegations. As discussed above, the record documents significant noncompliance with follow-up recommendations, particularly as it relates to the

>   claimant's Coumadin therapy. While the claimant indicated she
>   could not afford medical care due to financial problems and lack
>   of insurance, financial problems are not always an adequate
>   excuse for failure to seek regular medical treatment or
>   follow-up. . . . It is also noted that the claimant was made
>   aware of low-income options, which were available to the
>   claimant to ensure treatment. For example, in July 2012,
>   treatment notes document that the claimant had 100% financial
>   assistance through at least September 2012 from the Ohio State
>   University Medical Center; however, the claimant still failed
>   to show for a follow-up appointment. Further, Mr. Fenlon
>   assisted the claimant with obtaining social benefits, including
>   food bank assistance and house assistance, which suggests would
>   [sic] have been able to apply for medication assistance.
>   Additionally, the claimant told sources that she stopped
>   attending Coumadin treatment due to lack of finances but failed
>   to tell the clinics that she was unable to afford the services.
>   Rather, the claimant simply did not show up for appointments
>   resulting her [sic] in discharge. It could be argued that the
>   claimant's mental symptomology [sic] played a role in her
>   noncompliance; however, she was deemed mentally competent to
>   make her own health care decisions, which contradicts this
>   argument.
>
>   The claimant also testified that her mental symptomology [sic]
>   was controlled with medication, indicating that she felt
>   "steady" with appropriate treatment. She testified that she was
>   doing fairly well from a mental standpoint, which belies
>   allegations of a disabling mental impairment. Moreover, at the
>   hearing, the claimant betrayed no evidence of pain or discomfort
>   while testifying at the hearing. While the hearing was
>   short-lived and cannot be considered a conclusive indicator of
>   the claimant's overall level of pain on a day-to-day basis, the
>   apparent lack of discomfort during the hearing is given some
>   slight weight in reaching the conclusion regarding the
>   credibility of the claimant's allegations and the claimant's
>   residual functional capacity. Further, the claimant's admitted
>   daily activities are not limited to the extent one would expect
>   given complaints of disabling symptoms and limitations. In
>   particular, the claimant was able to utilize public
>   transportation regularly. She enjoyed going to the library and
>   reading for pleasure. She was able to name specific authors that
>   she enjoyed reading. She also indicated that she enjoyed
>   spending time with her grandchildren. She testified that she
>   walked around the zoo with her family, although she required
>   breaks. In all, these activities suggest greater abilities in
>   not only physical functions but also mental functions, in
>   particular as it relates to concentration and social
>   functioning.

*PageID* 747-48 (citations in and to the record omitted).

In evaluating a claimant's credibility, an administrative law judge

14

should consider the objective medical evidence and the following factors:

> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7, 1996 WL 374186 (July 2, 1996). The administrative law judge's credibility determination is accorded great weight and deference because of the administrative law judge's unique opportunity to observe a witness's demeanor while testifying. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citing *Gaffney v. Bowen*, 825 F.2d 98, 973 (6th Cir. 1987)). However, credibility determinations must be clearly explained. *See Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987). If the administrative law judge's credibility determinations are explained and enjoy substantial support in the record, a court is without authority to revisit those determinations. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 386–87 (6th Cir. 1978).

In the case presently before the Court, the administrative law judge considered the appropriate factors. In noting that the record documents numerous instances of plaintiff's non-compliance with treatment or of failure to follow-up with treatment, the administrative law judge did not base his finding on plaintiff's inability to pay for such treatment. Rather, the administrative law judge found that plaintiff's assertions of financial

constraint as an explanation for her failure to pursue treatment were simply unworthy of credit. Moreover, the administrative law judge's reference to a case from a different jurisdiction is simply immaterial to this Court resolution of the issues presented in this case. Although plaintiff argues in her *Reply* that her failure to pursue treatment is itself a manifestation of her mental impairments, this Court concludes that the administrative law judge's credibility determination enjoys substantial support in the record.  Under these circumstances, the Court will not – and indeed cannot – disturb that determination.

It is therefore **RECOMMENDED** that the decision of the Commissioner be affirmed and that this action be dismissed.


If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

June 12, 2015
<u>Date</u>                                               <u>*s/Norah McCann King*</u>
                                                   Norah McCann King
                                                   United States Magistrate Judge